Curia, per O’Neall, J.
These cases relating to the same property, were heard both on the Circuit and in the Court of Appeals together, and the questions arising out of them will be considered as if they arose out of one case. It will be useful to state briefly the facts upon which we are required to pass an opinion.
Philemon Starke, about the year 1800, intermarried with Margaret, the daughter of James Perry. According to the testimony of one witness Rebecca Graham, the negroes now in dispute, or the parents of of them, went into their possession after their marriage, being sent by James Perry to his son-in-law and daughter. On the 14th of April, 1806, James Perry made and executed his last will and testament, in which is contained the following'clause “ also I lend to my daughter Peggy Starke, four negroes, namely, one negro boy named Brister, one negro girl named Betty, one negro woman named Abby, and one negro boy named Isaac ; I also lend my daughter Ann Harrison, four negroes, namely, one negro boy named Niger, one- negro girl named Flora, one negro girl named Patty, one negro boy named George, daring their natural lives, and then to the heirs of their bodiesHe appointed his son Josiah, and his nephew Zadock Perry, executors of his last will and testament, “in trust for the intents and purposes”therein “contained.”
Philemon Starke survived James Perry some time, and died intestate, leaving his widow Margaret, and two children, Baldy H. Starke, and Jane Caroline, now the wife* of Elijah Hinson, him surviving. The negroes mentioned in the will of James Perry, as bequeathed to his daughter Peggy (the said Margaret) were in possession of the said Philemon at his death, and afterwards remained for some time in the possession of his widow. On the 16th of September 1823, the life estate of the said! Margaret, in the said slaves (as it was then supposed to be) under the will of James Perry, deceased, was seized in execution at the suit of Austin F. Peay v. Margaret Starke, for a debt contracted by her, as it is said, in satisfaction of a debt of her (deceased) husband ; and on the 6th of October in the same year was sold to the'plaintiff, Col. Peay, for $500. He kept the negroes in his possession for alittle more than one year after the sale, and on the 26th day of November 1824, sold to Baldy H. Starke the supposed life estate of his mother in them, for *30 $800, and delivered the said negroes to Mm. On the 29th. of November 1824, Baldy H. Starke executed a bill of sale of James B. Pickett in ’consideration of $1289, ($800 of which it was believed is advanced by Pickett to enable the said Baldy to purchase the negroes from Peay) conveying to him the negroes Abby, Isaac, Betty, Brister, Feriba, Jacob, Mahala, Charlotte, Mat, Letha, and Amanda; the bill of sale describes them as a parcel of negroes “ willed to my mother and the heirs of her body,” by her father; it warrants the title to them as far as the title of the said Baldy H. Starke extends. On the same day, the said Baldy II. and James B. entered into a written contract, whereby the said Baldy H. agreed to hire from the said James B. for the term of five years, the negroes Abby, Isaac, Feriba, Mahala, Mat, Letha, and Amanda, at the annual hire of one dollar ; and the said James B. agreed with the said Baldy H., that if he would, within five years, pay him $1289, with interest onflOOOfrom the 22d of November 1824, that he would make “him titles of the above named Brister, Betty, Jacob and Charlotte.” Baldy H. Starke died intestate, in January or February 1829, never having made any payment to the said James B. Pickett, and the complainant John J. Myers administered on his estate. In January 1829, the complainant, Hinson, intermarried with Jane Caroline, *and subsequently administered on the estate of Philemon Starke deceased. James B, Pickett had possession of Brister, Betty, Jacob and Charlotte, from the execution of the bill of sale ; and before the expiration of the year 1829, acquired possession of the rest of the negroes, except Amanda, who died in the possession of Baldy H. Starke, deceased As he alleges, he sold them just before the bills were filed, to James A. Knighton, who carried them out of the State But the Chancellor has, from the facts in evidence before him, come to the conclusion that the sale was a mere pretence, and that in fact the said James B. Pickett sent the said negroes to the western country, by the said James A. Knighton, to avoid the claim ofthe complainants. On the 27th of January 1830, Mrs. Margaret Starke conveyed to the complainant Mrs. Hinson, all the interest which she might have in the said slaves, in the event of its being decided that by her father’s will they vested in her absolutely as the first taker.
The following questions require our consideration and judgment:
1. What estate vested in Margaret Starke, in the said negroes, under the will of James Perry, deceased ?
2. If an absolute one, then, can the complainant, Hinson, as administrator of Philemon Starke, deceased, maintain his bill in the Court of Equity ?
3. If the title of the said slaves is in the administrator of Philemon Starke, deceased, what right has the defendant, James B. Pickett, under the bill of sale to him, executed by Baldy H. Starke, deceased ?
1. I have struggled to give effect to what I believe to be the clear intention, of the testator, that Mrs. Starke should take an estate for life ; and that, at her death, her children should, as purchasers, take the remainder. But the technical rule is too strong and too well settled, that the words, “heirs of the body,” must be considered words of limitation, and not words of purchase ; and that consequently, the estate vests in the first taker. Notwithstanding, I am not well satisfied with either the *31 justice or the reason *of the rule, yet I must be content to say “ita lex scripta,” and console myself by what is said by one of the great masters of the science of the Common Law, “that at some other time, in some other place, and on some other occasion, the wisdom of the rule may appear.”
The only three circumstances in this ease, which are supposed to vary it from the great body of cases, in which a bequest of a personal chattel to one and the heirs of her body vests an absolute estate in the first taker, are — 1st, that the word “lend” is used, instead of the word “give:” 2d, that the estate to Margaret Starke is expressly for life : 3d, that the word ‘ then ’ “ to the heirs of their bodies,” ties up the limitation to the time of her death; and that the words “heirs of her body,” are merely descriptive of a class of persons, (her children) who must, then be in esse, and take the estate as purchasers, and not by descent from her (if such a term as descent can be properly applied to personalty.)
The term lend, when used in a bequest, is generally equivalent to give. In some special cases, it has its appropriate meaning: as in the case of Baker v. Baker & Red, decided by this Court, in December, 1831. But in such cases there is something which shows that the testator did not intend the legal estate to pass to the legatee. In the will under consideration, the testator has not manifested any such intention; he uses the word to pass from him his entire property in the chattel; and it is worthy of remark, that he uses the word not only in relation to the life estate, which he had created as he supposed, for his daughter, but also to the absolute estate in remainder, which he also supposed he had created, in favor of her children. The testator parts with the entire dominion over the property, and it is absurd to say that an estate which can never revert, can be a loan, which implies that the use of the thing- is parted with for a limited time, or for a specified purpose, and the right of property remains in the lender. It is therefore clear that the word “ lend,” in this will, must be considered as synonymous with “give.”
The bequest to Margaret Starke is, it is true, expressly *for life; but the limitation over to the heirs of her body, showing that the testator has parted with the entire property to her and her descendants, enlarges the life estate into an absolute one, unless the remainder intended to be created can take effect. The circumstance of the bequest being for life, cannot, therefore, alter the case. In all the cases of executory devises, to one and the heirs of her body, the intention is obvious enough, that the first taker should take an estate for life only. But a technical rule “ nemo est hceres viventis,” intervenes and defeats the intention. In real estate, such words would constitute here, a fee conditional; in England, a fee tail. In personalty, the words “ heirs of the body,” can have no legal and technical meaning, so as to affect the estate : for in personalty, there is no descent cast upon the death of the first taker. The remainder cannot take effect per formara, doni, because the subject matter is not inheritable: and it hence follows, that the words “heirs of the body” in personalty, can have no other effect than to enlarge the estate of the legatee to an absolute one. This reasoning, I acknowledge, is technical, but it is in support of an arbitrary rule of construction, which is, itself, technical: and the reasons in support of it must be, necessarily, of the same character.
*32 The word "then ” cannot have the effect to tie up the limitation, so as to let in the children of Mrs. Starke, as purchasers. For the words “the heirs of her body,” still purport an indefinite succession of the line of the first taker; and before there could be a reversion to the testator, there must be an entire failure of descendants, according to the words employed by the testator. But, without pursuing this abstract question further, it will be only necessary to refer to the cases of Guerry v. Vernon, 1 N. & M’C. 69, and Henry & Wife v. Felder, 2 M’C. C. R. 323, in which all the questions involved in this part of the ease, are considered and decided in conformity to the views I have already stated.
Another view was presented by the counsel, for Mr. and Mrs. Hinson, why the remainder ought to be supported; it is that the testator constituted his executors trustees to preserve it. But I think there is nothing in the t° sus'*:ai1DL* this position. It is true the testator constitutes his executors trustees, for the intents and purposes contained in his will: but this was nothing more than the trust which resulted from their appointment as executors-, and their acceptance of it. If the testator had used any words leaving the property under the control of his executors, during the life of his daughter, so as to prevent any legal estate from vesting in her by the assent of the executors to her legacy ; or if he had bequeathed the property to them, in trust for the use of his daughter during life, and after her death, for the use of the heirs of her body, the argument would have been conclusive. This, however, has not been done, and we cannot give any effect to the words employed beyond the general trust, which the law imposes on every executor, to pay the debts and pecuniary legacies, and to deliver to the specific legatees the property specifically devised. Such a trust was ended, when the executors assented to the legacy to Mrs. Starke ; and can have no effect in supporting a limitation over by way of executory devise. I am therefore reluctantly brought to the conclusion, that Mrs. Starke took an absolute estate as first taker under her father’s will, and that the marital rights of her husband attached on the property and vested it in him, and that the right of property in the negroes now in dispute is in his administrator, the complainant Elijah Hinson. I say I have come to this conclusion reluctantly, because I believe it is against the testator’s intention, and .it may seriously prejudice the defendant. But if so, it is an injury of his own seeking. For had he not raised the question, all the other parties would have treated the property as for life, to Mrs. Starke, and after her death to her children in remainder, under the will of James Perry, deceased.
2. This brings me to the consideration of the second question, can the complainant Hinson, as administrator of Philemon Starke, deceased, maintain his bill in the Court of Equity ? I think he can. The defendant acquired possession under Baldy H. Starke, who bought no more than a life estate supposed to be in Mrs. Starke. The defendant knew the situation of the title, at the time he accepted the *bill of sale from Baldy H. Starke, and only intended and expected to acquire by it an estate in the whole of the slaves, for the life of Mrs. Starke, and a moiety in remainder, in the right of Baldy H. Starke, as a co-tenant in remainder with Mrs. Hinson. If Baldy H. Starke had been in possession under his purchase from Col. Peay, the complainant Hinson, as *33 administrator, would have been entitled tobave proceeded against him in Equity, on two, grounds : first, that he was a distributee in possession; and to prevent circuity of action, the Court of Equity would have taken cognizance of the case, and if there had been no debts, or if any, after providing for their payment, would have decreed distribution : secondly, that he might have been permitted to set up, and claim payment of the debt of his father, for which the judgment of A. F. Peay v. Margaret Starke was recovered, and to pay which the slaves had been sold for the life of the said Margaret. The defendant being in possession, under Baldy H. Starke, is prima facie, to be regarded as the owner of all his interest; ancl if that be true, there would be no doubt that the Court would retain the bill against him, for the same reasons which it would against his grantor Baldy H.; but it will turn out in the sequel, that the defendant is not the owner of the distributive share of the said B.aldy H. in the said shares. Still this cannot oust the Court of jurisdiction ; for he is in possession, claiming to hold all the rights of Baldy H. Starke, and hence he was a necessary party to a recovery and distribution of the property. But the defendant is not only in possession under Baldy H. Starke, but he also stands in the relation of mortgagee to him. For I have no doubt that the bill of sale, and the agreement, allowing to Baldy H. Starke the right of redemption, is, in Equity, a mortgage. As against Myers, administrator of Starke,, he could not dispute the title of Baldy H. Starke as tenant for the life of Mrs. Starke,'and as co-tenant in remainder with Mrs. Hinson. For he entered under that title. As long as the contest was between them, he would have been estopped to deny the title of the mortgagor. It is the intervention of the paramount title *of Philemon Starke, deceased, which Hinson as his administrator has been forced to set up, by the defendant’s defence, which could alone prevent Myers, from obtaining, as administrator of the mortgagor, a decree allowing him to redeem. The assertion of this paramount title enables the mortgagee to say legally to the administrator of Starke; “ I can neither give up possession 'to you, nor permit you to redeem, for the property is claimed from me,,by another, claiming in a different right.” In this point of view, the defendant becomes as it were the holder of a fund, or property, to which two claims are presented; in such a case he might by a bill compel them to interplead and settle their rights, so as to enable him to pay or-deliver it to the legal owner. The same reason which would authorize the Court to sustain his bill, to prevent him from being harassed by two suits at law, for the same property, will, when applied to the complainants, authorize the Court to interfere at the instance of the paramount legal right. It will save the litigation of a suit at law, between the complainant Hinson and the defendant, and another suit in Equity, between the two complainants Hinson and Myers. But the defendant cannot be permitted to turn the party out of the Court of Equity, who has a clear right to come into it, to redeem, by setting up the paramount title in the administrator of Philemon Starke, deceased, without submitting to a decree in its favor.
Independently, however, of this view, the complainant 'is entitled to relief in the Court of Equity. The defendant is in possession, and out of Baldy H. Starke’s share of the property, is entitled to be paid the debt which he owes him, and to secure the payment of which he conveyed *34 to Mm the said slaves, if it should not turn out that there are other debts of a higher rank, sufficient to consume the whole of it. This fact, although no ground to prevent the Court of Law from entertaining jurisdiction of an action brought to recover the said slaves, is yet such an equity between the parties as authorizes the Court of Equity to retain the bill, and while it decrees the property to be delivered up to the eom-plainant Hinson, at the same time secures the rights *of the defendant, by-making provision as far as practicable, for the payment of his debt. The defendant, too, it must be recollected, furnished the money which enabled Baldy H. Starke to purchase the .negroes from Peay. If the fact be, as it is alleged, that Peay’s debt against Margaret Starke was really contracted in satisfaction of a debt of Philemon Starke, deceased, then I think that the debt ought now to be set up against his estate: and as it has been satisfied with the money of the defendant, I think he may be subrogated to Peay’s rights in this respect, in order to aid in the payment of Baldy H. Starke’s debt to him. This circumstance in itself constitutes a ground of equity jurisdiction, and it is perfectly immaterial tliat it is a ground for the defendant to claim the aid of equity; for if the Court sees that after sending the complainant to law, the defendant will bring him back into the Court of Equity, to set up his equity, the Court will, without this circuity, retain the bill, and decree at once on all the questions which can be made.
If the complainant, Myers, administrator of Baldy H. Starke, deceased, had been a party to the bill of Hinson as administrator, it could not have been denied that the Court would entertain jurisdiction both against him and Pickett.
For, as between Myers, as administrator, and Pickett, as mortgagor and mortgagee, the jurisdiction is unquestionble; and it would have been equally so, between Hinson administrator, and them, when he alleged, as the fact is, that the property mortgaged, is the property of his intestate, and that out of it, as such, Pickett had no right to be paid, as mortgagee, the debt owing to him, and secured by the mortgage : and for the same reason, that the mortgagor could have no right to redeem. The effect of the two separate bills being tried together, and decided upon by one decree, is precisely the same as if all the matters contained in both had been stated in one, by both of the complainants. All parties in interest are before the Court, and will be bound by whatever decree may be pronounced: the cases, therefore, may be consolidated, and any necessity for the formal addition of Myers, administrator of Starke, *as a eomplahiant in, or defendant to the bill of Hinson, will be thus superseded.
I am disposed, however, not to rest the jurisdiction of the Court on these views alone: I will add another, which, to my mind, is perfectly satisfactory. When Hinson and wife filed their bill, they had the right to consider Pickett as in possession of an estate in the said slaves for the life of their mother, under the bill of sale of Baldy H. Starke ; and from a tenant per auter vie, who had sold, removed, or attempted to remove the property beyond the jurisdiction of this State, the tenants in remainder had the right in Equity, to demand security for the forthcoming of the property, on the falling in of the life estate—(Swann v. Ligon & Budd, decided at Columbia, May Term, 1828.) Baldy H. Starke *35 bought the slaves from Peay, for and during' the life of his mother; he conveyed this right, and possibly his supposed interest in remainder, by his bill of sale to Pickett. The complainants were willing to concede to Pickett the life estate of their mother, and from the manner in which he acquired possession, they had the right to suppose he would not raise a contest which would defeat his own rights. If he had conceded, as the complainants had done, that Mrs. Starke had an estate for life in the slaves, and that it was conveyed to him, there could have been no doubt of the jurisdiction of the Court, to have ordered him to give security for the forthcoming of the property, if they had shown, as it appears they did, that he had endangered their rights in remainder. To defeat this plain and obvious equity of the complainants, he has set up the existence of a paramount title in Philemon Starke, deceased; and to meet this possible state of things, the complainant (Hinson) administers on his estate, and superadds the whole legal title to his defective equitable title to a moiety, and amends his bill, and prays a decree under it. Does this oust the jurisdiction of the Court of Equity f I think it does not. For the defendant sets up the paramount title to defeat the complainant’s right to a decree, in a case confessedly within the jurisdiction of the Court of Equity, if their allegations are true.
On the part of the complainants, it is said this may be *true, and if so, the legal title is also with us, one of us being the administrator, and we therefore claim a decree in favor of it. The legal title is obliged to be decided on, its validity established, before the complainant’s equity can be denied. When this is done, it would be nugatory to send the parties to law to try a question which the Court of Equity has already decided, as it must be there decided. When a legal title is raised by the defendant in his defence, or comes in question collaterally, the Court of Equity must decide on it. In this ease it is raised by the defendant’s defence, and is necessary to him to prevent their Equity from prevailing; but it is found on examination, that this legal title set up by the defendant, is in one of the complainants, and that therefore he is entitled to the benefit of it, and as it is brought forward by the defendant, the Court must decree upon it in favor of the complainant to whom it belongs.
3. I am satisfied that the defence, carved out by the defendant for himself, is the destruction of his title, under Baldy H. Starke, deceased. The right of property being in the administrator of the intestate Philemon Starke, when he conveyed to the defendant, he conveyed to him no title, legal or equitable. For his bill of sale purports to convey the slaves themselves ; this he could not do, as the property was in another. It cannot convey his distributive share, for no words descriptive of it, as such, and indicating an intention to convey it, are used. In the slaves, when he conveyed, he had no legal interest whatever ; his interest was a mere equity that the administrator would deliver him one-third, after payment of the debts. Until administration has been made, his right is only inchoate, for it may be that the debts may consume it all. His bill of sale, not conveying his distributive share, his administrator is entitled to take it, subject to an account and deduction from it, for the hire of such slaves as he had in possession. The defendant’s right to be refunded the money which he advanced to Baldy H. Starke, and to secure the payment of which the slaves were conveyed to him, with the interest thereon, *36 is a simple contract debt against Baldy H. Starke, and must be paid accordingly, by bis administrator, so far as his assets will extend. As *ancillary, and perhaps on an account had it may turn out in lieu of it, I think the defendant Pickett may be subrogated by virtue of the conveyance to him of the slaves, and the loan of the money to Baldy H. Starke for their purchase by him from Peay, to the right of Baldy H. Starke and Peay, to have $800 of the debt in the case of A. F. Peay v. Margaret Starke, with interest from the 24th of November, 1824, set up as a debt against the estate of Philemon Starke, if it should turn out on investigation that the allegation is correct that the judgment of Austin F. Peay v. Margaret Starke was on a contract entered into by her, to satisfy a debt of the said Philemon.
It is ordered and decreed that the Chancellor’s decree be modified according to the principles contained in this opinion ; that the case of Elijah Hinson and wife, and Elijah Hinson as administrator of Philemon Starke, deceased, v. James B. Pickett, and the case of John J. Myers, administrator of Baldy H. Starke, deceased, v. James B. Pickett, be consolidated, and henceforward considered as one case, in which Hinson and wife, Hinson as administrator, and Myers as administrator, ar# to be considered as complainants, on the facts stated in both bills, and Pickett, the defendant, to have the benefit of both his'answers as one.
It is also ordered and decreed, that the defendant, Pickett, do forthwith deliver to the complainant Hinson as administrator of Philemon Starke, deceased, the slaves in dispute, or on failing to do so within two months after notice of this decree, that he account to him before the Commissioner for the value of them, and that he, in either of the alternatives pointed out in this part of the decree, do account with the said Hinson as administrator, before the Commissioner, for the hire of the said slaves, from the time they respectively came into Ms possession, until the day on which he shall deliver them up, or be charged with their value as the case may be, with interest on the annual hire.
it is further ordered and decreed, that the Commissioner do inquire and report, whether the judgment of *Austin F. Peay v. Margaret Starke, was on a contract entered into by her, for and in satisfaction of a debt of Philemon Starke, deceased, and if so, whether on the 24th of November, 1824, it amounted to and exceeded $800 ; and in that case to allow the defendant, James B. Pickett, credit for that sum, with interest from that time, in his accounts with the administrator of Philemon Starke, deceased ; if, however, it did not amount to so much, then for whatever sum it did amount to, with interest from that time. If, however, it was not for the debt of Philemon Starke, deceased, but was the proper debt of the said Margaret, then no credit can be allowed for it’ in the accounts with the estate of Philemon Starke, deceased, but it must remain as a charge upon the distributive share of the said Margaret,' by her voluntarily conveyed to Mrs. Hinson.
It is also ordered and decreed, that the administrator of Baldy H. Starke do account for the hire of the said negroes during the time they were in the possession of the said Baldy, with interest on the annual hire, and that the same be deducted from the amount of his distributive share of the personal estate of the said Philemon Starke, deceased, recovered in this case.
Clarke and M’Dowell, for the defendants.
It is further ordered and decreed, that the Commissioner do report the amount and rank of the debts of Philemon Starke, deceased, and also of Baldy H. Starke, deceased, including whatever may be due James B. Pickett on account of the money paid by him to Baldy H. Starke for the conveyance of the said slaves, after deducting (if any sum should be reported) whatever may be allowed to him, as a credit in the accounts of Philemon Starke, or as a charge on Margaret Starke’s distributive share, on account of Peay’s judgment against her.
It is further ordered and decreed, that if the slaves are delivered to the complainant Hinson, administrator, that he do forthwith sell the same for partition, on a credit of one year, taking bonds and security and mortgages from the purchasers, and that he do return the amount of sales to the Commissioner, as well as to the Ordinary ; and that the Commissioner do take the same into account in making up his *final report of the amount of the estate of Philemon Starke,'deceased, for distribution,
It is further ordered and decreed, that the personal estate of Philemon Starke, deceased, after payment of his debts, be distributed as follows: one-third as the distributive share of Margaret Starke (after deducting therefrom the amount of Peay’s judgment, if it should not exceed §800 with interest from the 24th of November, 1824, if the same should be for her proper debt, and not ‘for the debt of Philemon Starke, and paying the same over to James B. Pickett,) be paid to Elijah Hinson and wife, under the voluntary conveyance of Mrs. Starke to the said Mrs. Hinson ; one other third, the distributive share of the complainant, Jane Caroline Hinson, be paid to Elijah Hinson and wife ; and the remaining third, the distributive share of Baldy H. Starke, deceased, after making the deduction for hire hereinbefore directed, be paid to his administrator, John J. Myers, that out of it he do first pay the costs of the case, John J. Myers, administrator, v. James B. Pickett, up to this time, and then that out of the balance he do pay the debts of Baldy H. Starke, deceased, so far as his assets shall extend, in the order and proportions which may be fixed hereafter by the decree of the Court of Equity in this case.
The defendant must, pay the costs of the case of Hinson and wife, and Hinson, administrator : any further costs which may hereafter accrue in this case, will be subject to the order of-the Circuit Court, to be hereafter made on the coming in of the Commissioner’s report.
Johnson and Harper,, Js., concurred.
Peareson and Nott, for the complainants.